**SQUIRE, Collector of Internal Revenue, v. SUMNER RHUBARB GROWERS' ASS'N.**

No. 12406.

United States Court of Appeals Ninth Circuit.

Aug. 3, 1950.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, Fred E. Youngman and Howard P. Locke, Sp. Assts. to the Atty. Gen., J. Charles Dennis, U. S. Atty., Guy A. B. Dovell, Asst. U. S. Atty., Tacoma, Wash., for appellant.

John W. Fishburne, Tacoma, Wash., for appellee.

Before STEPHENS and BONE, Circuit Judges and McLAUGHLIN, District Judge.

BONE, Circuit Judge.

Appellee brought suit in the District Court to recover a refund of $89.14 in employment taxes for the years 1943 through 1946 which, pursuant to 26 U.S.C.A. § 1400 et seq., had been paid by appellee upon the wages of its office personnel. The claims for refund had originally aggregated $366.03 but the Commissioner's ruling allowed the claims insofar as they covered the tax on the wages of employees other than office employees. The trial court, after a hearing, concluded that under the provisions of 26 U.S.C.A. §§ 101(1) and 101(12) appellee was exempt from social security tax upon any of its employees, and entered judgment in favor of appellee for the full amount plus interest and costs.

The facts are not in dispute and the problem on appeal concerns the proper application of the law to those facts. Appellee is a co-operative agricultural corporation organized under the laws of the State of Washington. Its members, numbering approximately 100, are rhubarb growers whose farms are located in the vicinity of Sumner, Washington. Appellee's principal business is selling the rhubarb grown by its farmer members. Most of the rhubarb is packed by these members in boxes which are sold to them at cost by appellee. Appellee then transports the rhubarb from the farms to its warehouse where the boxes are labeled according to grade and then stored until sold and shipped to the buyers. The proceeds from the sales are returned to the members except twenty cents per box which is retained to cover expenses of operation. Any amount remaining in this fund at the end of the season is returned to the members.

Appellee is only active during the four month rhubarb growing season. It employs a maximum of approximately twelve people. Most of them are engaged in the actual packing, labeling, transporting, storing and shipping of the rhubarb. Three or four of the employees are engaged primarily in office work. The question before us concerns the applicability of the Federal Insurance Contributions Act 26 U.S.C.A. §§ 1400–1432 to these office employees.

Section 1426 defines "employment" under the Act as meaning "* * * any service, of whatever nature, performed * * * by an employee for the person employing him * * *," with several enumerated exceptions. Three of these exceptions are pertinent to consideration of the problem before us.

■ Section 1426(b) (10) (B) excepts from the definition of "employment" service performed in the employ of an agricultural or horticultural organization exempt from income tax under section 101 (1). If, as the trial judge concluded, appellee is an agricultural or horticultural organization within the meaning of section 101(1) of the Internal Revenue Code it follows that none of the service performed by any of its employees constitutes "employment" under the Social Security Act. However, we think, that the trial court clearly erred in reaching this conclusion. Treasury Regulations 111, § 29.101(1)-1 limit the scope of section 101(1) of the Code to agricultural or horticultural organizations which: "(1) Have no net income inuring

to the benefit of any member; (2) Are educational or instructive in character; and (3) Have as their objective the betterment of the conditions of those engaged in such pursuits, the improvement of the grade of their products, and the development of a higher degree of efficiency in their respective occupations." The trial court did not hold that these regulations are arbitrary or invalid and appellee does not so argue. Instead, appellee contends that it comes within the regulatory requirements. We think that a realistic view of the situation discloses that in fact all of the income from appellee's business transactions inures to the benefit of its members. Furthermore, the evidence does not show and appellee does not contend that it is an organization which is in any degree educational or instructive in character.

■ Appellee next contends that the services performed by its office employees are excepted from "employment" by the provisions of section 1426(b) (10) (A). That subsection provides a limited exception for services performed for organizations exempt from the payment of income tax under section 101 of the Code. The trial court concluded that appellee was ex-

empt from the payment of income tax under section 101(12). It was undoubtedly correct in so holding.[1] However, that does not dispose of the matter. For unlike subsection (b) (10) (B) of section 1426, subsection (b) (10) (A) does not provide a blanket exception. To the contrary, only limited exceptions are accorded and appellee does not contend, nor would the record permit such contention, that the services of any of its employees here in dispute fit within the statutory limitations.[2] Consequently, even though appellee is exempt from payment of income taxes it does not follow, under the facts shown here, that it is exempt from social security taxes upon the wages of its employees.

■ Appellee points to another section of the Code to sustain the judgment of the court below. Section 1426(b) (1) excepts from the term "employment," "Agricultural labor, as defined in subsection (h) of this section." Turning to subsection (h) we find a rather comprehensive and specific definition of the term "agricultural labor." Both parties agree that if the services here involved constitute agricultural labor they would do so only under the provisions of subdivision (4) of subsection (h).[3] Appel-

1. Section 101(12) exempts from payment of corporate income tax "Farmers', fruit growers', or like associations organized and operated on a cooperative basis (a) for the purpose of marketing the products of members or other producers, and turning back to them the proceeds of sales, less the necessary marketing expenses, on the basis of either the quantity or the value of the products furnished by them, or (b) for the purpose of purchasing supplies and equipment for the use of members or other persons, and turning over such supplies and equipment to them at actual cost, plus necessary expenses." It will be seen that appellee organization fits exactly into the wording of this statute. It is conceded by appellant that appellee had, under a ruling of the Commissioner, been declared exempt from payment of income tax pursuant to the provisions of § 103 (12) of the Revenue Act of 1928 for the years 1931 to 1939 and that the provisions of this section are identical (insofar as here pertinent) with the present § 101(12). Apparently the Commissioner has revoked appellee's § 101(12) ex-

emption status for failure of appellee to submit necessary proof, but we think that the record clearly shows that appellee is an organization exempt from payment of income taxes under the provisions of the section quoted above, and appellant makes no point of it.

2. Section 1426(b) (10) (A) only excepts services performed in the employ of an organization exempt from income tax under section 101, if "(i) the remuneration for such service does not exceed $45 [per quarter], or (ii) such service is in connection with the collection of dues * * *, or (iii) such service is performed by a student who is enrolled and is regularly attending classes at a school, college, or university;"

3. Section 1426(h) (4) includes as agricultural labor all services performed "In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is

lant's position is that these provisions require the employees to actually do the physical work of handling, packing, storing, delivering, etc., the rhubarb, if their services are to constitute agricultural labor. The Treasury Regulations so provide.[4]

Appellee contends that since the services in dispute are a necessary incident to the marketing, storing, transporting and sale of the rhubarb they therefore constitute "agricultural labor" within the statutory definition of the term; that the portion of the regulation to the contrary (see footnote 4, supra) should be declared invalid because it is arbitrary, unreasonable and in conflict with the statute and with other portions of the regulations. This contention must be considered in light of the Supreme Court's declaration that courts should not ordinarily interfere with the regulations.[5]

Appellee points out that subdivisions (1), (2) and (3) of subsection (h) include the phrase "in connection with" in defining services which constitute the excepted "agricultural labor," and contends that even though this phrase is not included in subdivision (4) it should be read in by implication. We do not think that such a construction is warranted here. The Secretary, in promulgating the Treasury regulations, apparently felt that the omission of the broadening words "in connection with" from subdivision (4) justified a stricter construction of that subdivision than that accorded the preceding subdivision, all of which carried the term "in con-

nection with." We see no weighty reason to overrule this construction. It is perhaps a narrower interpretation than we would have given the statute in the first instance, but since it does not depart from or conflict with the exact language of the statute, we cannot say that it is inconsistent therewith, or otherwise arbitrary or unreasonable.

The trial court refused to declare this portion of the regulations to be invalid, but held that it did not apply to the facts of this case. We think that it clearly does, and therefore must control.

Appellee argues that the words "incident to" in subdivision (4) (see footnote 3, supra) require the same broad construction as the words "in connection with" of the preceding three subdivisions. We do not agree. Clearly the qualification that the services be *incident to* the preparation of fruits or vegetables for market was included as an *additional requirement* over and above the requirement that the services be performed *in* handling, etc., the commodities.

Birmingham v. Rucker's Breeding Farm, 8 Cir., 152 F.2d 837, which appellee contends supports the judgment below, is readily distinguishable. In that case the court held that the services performed by the appellee's employees (including office employees) constituted agricultural labor. However, the court was there concerned with the application of subdivision (3) of section 1426(h). It pointed out that the words "services performed * * * *in*

performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption."

4. T.R. 106, § 402.208(e) (3), which interprets § 1426(h) (4) of the Act, specifically provides that since the exempted services must be rendered in the actual handling, etc., of the commodity,

"such services do not, for example, include services performed as stenographers, bookkeepers, clerks, and other office employees, *even though such services may be in connection with such activities.*" (Emphasis added.)

5. Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831, "This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons."

**98**

*connection with* the hatching of poultry" were clearly used by Congress advisedly and required the broad construction given to that portion of the statute by the district court. Applying the same reasoning we think that the omission of these words (italicized above) from the section of the Code which is involved in this case clearly justifies the construction given by the Treasury Department in its regulations.

Reversed with directions to enter judgment for appellant.